Good morning and welcome to the Ninth Circuit. A little housekeeping before we begin, two submitted cases, Rahman v. Barr and Bybee v. Bank of America, both of those are submitted. We've got four argued cases, the first of which is Rodriguez-Valla v. Barr. When you're ready. We've read your briefs, so we look forward to your argument. Thank you, Your Honor. Nicholas Markey May it please the Court, my name is Nicholas Markey. I represent Moises Rodriguez-Valla. Looks like we'll see you a couple times today. Yes, you do have me a couple times. And we saw counsel for the government twice yesterday and today. So I shouldn't feel too stressed out if he had two yesterday and I've got back-to-back. May it please the Court, Nicholas Markey on behalf of Mr. Moises Rodriguez-Valla. Your Honors, this is a petition for review regarding several motions to reopen and reconsiderations that were filed after the BIA had dismissed the initial appeal regarding cancellation of removal. In 2013, October, the IJ denied the initial COR application. I have a question about that. Yes. Your claims seem to stem primarily from the BIA's denial of your first motion to reopen, yet you did not file a timely petition for review of that decision. So do we have jurisdiction to review your legal claims challenging that decision? I believe you do, Your Honor. The initial motion to reopen and terminate that was filed was denied by the BIA. Counsel then filed a reconsideration. And it is our position, Your Honors, that the third decision of the BIA. Could you give me the date? Because I – what date? That's the February 27, 2015 decision at AR-03. There, the Court or the Board did address the issue of the voluntary departure. And the question was whether that was extended or not. The problem we have with the Board of Immigration Appeals, Your Honors, is that there is no voluntary departure. By automatic operation of law, when you file the motion to reopen, that withdraws it, vacates it, terminates it, however you want to classify it. The voluntary departure order no longer exists. And our position is that this whole argument that whether it was extended or not isn't the issue that the Board should have addressed. Now, the Board did address in the second decision, which was dated December 24, 2015. There, the Board stated that the evidence does not indicate that the respondent's grant of voluntary departure was automatically terminated. We don't have to demonstrate it. It's by statute and regulation, the EIOR says, should you file a motion to reopen, your voluntary departure is vacated, withdrawn, or – Except your form I-210 that you submitted in support of your motion to reconsider appears to have been issued January of 2015, which was months after both the original voluntary departure deadline and even after the deadline for the motion to reopen. So, I guess, how does this document support your claim that the local DHS office extended the voluntary departure period before Rodriguez-Vias filed his first motion to reopen? It couldn't get more complicated than – It gets more complicated. That's the problem. Now, the fact that ICE allowed them to provide the 220, that is verification that he's checking in and counsel below argued that it was an extension, I still maintain that the fact that you filed the motion to reopen back in September thereby vacated or terminated the voluntary departure order and you were to a removal order. The question becomes then is when does that date of removal execute? I appreciate that argument, counsel, but since your time is ticking, could I get you to circle back to Judge Callahan's question? Yes, please. So, I'm looking – for me, this case turns on AR-20, which was filed with AR-21 and 22, right? So, I don't know how when he filed, whether we called a motion to reopen or a motion to reconsider, how did we get around that there's an individual going to the government, checking in, it seems to me very faithfully checking in and getting extensions. I'm going to put air quotes around extensions from ICE because I fully appreciate the government's argument that their position, I think this is a legal impossibility. Nevertheless, here we are with this individual getting extensions, extensions, extensions. And since he filed these, you know, the handwritten – what I'm going to call the handwritten extensions, AR-21 and 22, with the motion, I don't see any indication that the immigration court looked at those or considered those or answered those at all. There's a statement that these aren't what they purport to be. I can't tell that they were even considered. I would agree. You can't tell. Okay, so this comes back to – and maybe counsel can help me. I've been asking all week to the point where my colleagues want me to hush up, but they know I've been asking questions. I've been asking all week. I have a real concern about an A file. Where's the A file? DOJ seems to be – the attorneys come to court, they haven't seen the A file because it's sort of a client file. But without it – well, so that's the first question. So who looks at that? And when the government represents that a departure order is entered consistently with it, I have concerns. And this is sort of a prime example. These are handwritten – I'm going to call them extensions. Handwritten extensions. I would imagine, but I'm just making this up, that in this day and age, these are entered into a computer somewhere and that DHS would know about that. But it doesn't look to me like that's happening. And so I'm left with a record. I can't make heads or tails of this record. Oh, I agree, Your Honor. And I don't know that I can answer your question. I can give you some background information. I'll take it, and then I will welcome an explanation from the government as well. So as the Court is aware, we have EIOR, the immigration judge in the court, who address these issues. Right. Then you have ICE that does the enforcement end of it. Right. And then you have USCIS that does some of the petitioning, the granting of the adjudications. The problem you run into is DHS, which is the umbrella group, doesn't always know what the left hand and the right hand are doing. And nobody tells the judge in the middle what's going on. So you may have ICE granting these extensions, and we may submit it to the court, but that information would go to an A file. The A file is going to be –  It had to have, Your Honor. Wait, wait, wait, no. Do you mean 21 and 22 had to go to the A file, or 20? They all would have gone to the A file, but the A file is different than the administrative record. That's the problem. Well, is it contested? Can we just pass the A file first of all? Okay. Are you – I'm saying they exist. What? The 20, those documents do exist. Well, I know they exist. I'm looking at them. My question is, when there's this handwritten record, 21 and 22, right, handwritten extensions, to use the term loosely, you're confident that those extensions are entered into an A file, but not necessarily into the administrative record? Right. Here they are. Is that a yes? Yes, yes. They are in both. So they would have been entered into the A file because the officer who is enforcing the voluntary departure has the A file in his possession. Well, should anyway. Right. He should. Well, true. Okay. Secondly, because it was filed as a document that was attached to the motion to reopen and reconsider, or the motion to reconsider, it would be part of the administrative record. Let me say it. Do you mean 20, 21, or 22? Yes, Your Honor. Yes, what? Yes, it would be included. It is all three documents? Yes. Thank you. Okay. Yes. So I have a question, though. But if both the statute and the regulations say that a total period of voluntary departure, including any extensions, cannot exceed 60 days, but Rodriguez-Faya claimed that the local DHS extended his voluntary departure period to February 2015, which is around six months beyond the original departure deadline, can you point to any legal authority that allows DHS to extend voluntary departure for as long as you claimed it did here? Any legal authority, Your Honor? The only thing that I know of. Well, yeah, we're a court. Yeah, I understand that. So legal authority is something that we like if it's there. I understand that. And I don't know that I have any legal authority other than it's within their discretion. Now, the government will maintain that, no, it's 120 days, and that's what the regulations say. You can't extend it. But they did extend it. So, therefore, they waived it by their own extension. Okay. Then, one, I know where I'm sure that our presiding judge will give you a little time for rebuttal if we're using up all your time, but generally we do not have jurisdiction to review a decision by the agency not to reopen Sue Esponte. Okay? Okay. So what is your strongest argument that we have jurisdiction over the denial of Sue Esponte reopening in this case? In this case, Your Honors, I would say that it was an abuse of discretion that would get me there. Now, I know the government had submitted a 28J letter where it said the court did have jurisdiction unless it was a factual matter. Here we're not saying it's a factual matter, and, therefore, we believe that the court does have jurisdiction. It's not a factual matter because there's purported extensions? There's A, the purported extensions, and B, how, again, can you extend something that is automatically terminated by the filing of the motion to reopen? I appreciate the first argument. Okay. All right. I'll reserve two minutes. You've got 27 seconds, but we'll give you two minutes. Thank you, Your Honor. I really have been waiting all week for someone to explain this to me, so I'm very happy. And I'm sure you're ready and able to explain everything. I will try, Your Honor. Good morning. Strong woman. Okay, I'm ready. May it please the Court, my name is Jocelyn Wright. Still? Yes. On behalf of Respondent, the United States Attorney General, let me start from the beginning about the question. Putting aside our position is very clear on the briefs that the voluntary departure issue is solely within the Sue Esponte rubric because that was the only place that the Board addressed the merits. To the extent that he's relying on reconsideration as a hook, the motion to reconsider was denied solely on procedural grounds, which was that he didn't submit any overlooked legal or factual error. And that was the basis for the Board's denial of reconsideration. That is insufficient to get to the substance of the voluntary departure issue. But since the Court does have questions, I'm going to address them. Thank you. First of all, they are not extensions. What are they? They're part of all of the notations on that. If you look at the administrative record, according to the I-213, Mr. Rodriguez came to the attention of DHS when they filed the detainer from a jail. He was taken into custody. And so during the custody, while he was detained in immigration custody, apparently he was released on bond or recognizance. It's not clear. But he was in detention. So the notations, if you look at the handwritten notations at AR-21, starting at AR-21, they start at August of 2010. So his reporting to the DHS officer was part of his conditions of release, of supervision. So these are not extensions. These periodic check-ins are part of the conditions of supervision that was part of his release when he was released from immigration detention in 2010. And the I-213, this is at AR-436, indicates that he was detained. He was in immigration custody before he was placed into immigration proceedings. That's why he had the periodic check-ins with a DHS officer. Do we know that from ñ is there something I missed in this record when I was looking for that? I appreciate your explanation absolutely, but how would I connect those dots here? It's basically from the I-213, the information from the I-213. I'm looking at AR-20, and at the top it says on October 17, 2013, you were granted voluntary departure. You are required to depart from the United States to 8-2015. Right. So what am I supposed to do with that? And the date that form was created was January 8, 2015, which is the date of the last report on the handwritten AR-22. That's correct. Just to piggyback on Judge Fletcher's question, so what do we do with that? So, again, this was part of the ñ maybe it would be helpful if I went through the timeline. And the heading on this document is voluntary departure. The heading on it is ñ I admit that, Your Honor, but if you look at the first checked box is the sentence that you read. The second checked box is your request for an extension of time to depart. That would be the box that would be checked if this were an extension. But this is not. Well, but ñ As the DHS ñ But if I've got a document, and maybe I'm not a sophisticated immigration lawyer, but I have a document that is headed voluntary departure, and it says that I'm supposed to leave on a certain date at my own expense, which is how voluntary departure works, on a certain day, I'm supposed not to believe that? I'm supposed to say I should have gone a long time ago? What am I supposed to think? Well, Your Honor, the voluntary departure was initially granted by the immigration judge in ñ That's what it says. Right. And then the board reinstated it on appeal, and that was in June 12, 2014. He was only given 30 days to voluntarily depart. So the voluntary departure date expired on July 12, 2014. And this is a government form, filled out by the government, saying you have until this date to depart. You were headed voluntary departure. And now the government says, sorry, we didn't mean that. You might have misread that. If I'd been in his position, I would have misread it too. Or maybe in my own position, I would have misread it, which suggests to me maybe I'm not misreading it. I'm just reading it. But I have until, as it says, the 8th of February, 2015, to voluntarily depart. And again ñ Box, can you just go back to where Judge Fletcher is? Uh-huh. The first box is checked. On October 17, 2013, you were granted voluntary departure by the checkbox IJ. Yes. Period. You were required to depart from the United States on or before February 8, 2015, at your expense. Period. Which box is it that would have been checked? The one underneath that entire sentence, the second box. It says your request for extension of time to depart from the United States.  For an extension? Yeah. It's not clear in the record, Your Honor. If he never made a request, why in the world would they check the box? Because according to his lawyer below, that was what this is. She described all of the check-ins as extensions of the voluntary departure date. And she says that this was an extension of the voluntary departure date. You know, the government hates to be stopped by its own misleading behavior. I understand that. But the government seems to me to have misled him terribly. With respect, Your Honor, I would disagree. And let me do that. Let me explain. He's not supposed to believe what's here? Well, let me explain by putting it in context, in the timeline. So the voluntary departure period expired on July 12, 2014. According to the check-in log, he was scheduled to report to DHS on September 11, 2014. Now, when you say check-in log, do you mean AR-2122? Yes. Okay. Yes, I do. On September 11, 2014. But before that, on August 18, 2014, his attorney served DHS with a motion to reopen and remand, arguing that he is now eligible for adjustment of status and because his wife's visa number was now current. That was August 18, 2014. So the voluntary departure had already expired by the time that she filed the motion to reopen, but the petitioner filed the motion to reopen. So counsel's argument today that the filing of the motion to reopen terminated the voluntary departure is really beside the point. The voluntary departure period had already expired. There was nothing to terminate. And so when the board, and then, of course, when that happened, DHS filed its opposition to the motion to reopen, saying that, no, you can't reopen on the basis of eligibility for adjustment because you overstayed your voluntary departure period. Therefore, you're ineligible. So counsel and petitioner were both on notice of DHS's position that because he did not leave within the 30 days of voluntary departure that the board had reinstated, he was not eligible for adjustment of status under Section 245I. He would have to go abroad and immigrate through overseas consular processing instead. Regardless. And how long would the waiting period be? I don't know that offhand. Is there a statutory waiting period? Given the fact, in your view, that he overstayed his voluntary departure period? I think there's a 10-year bar that he could get a waiver of. I don't think it's just a matter of leaving and making an application to the U.S. consul.  No, I understand, Your Honor. Well, is he eligible for anything anyway because he's had two DUIs, too? How does that factor in? I mean. Eligible for adjustment? Well, yeah. What, I mean, do his DUIs factor into this at all? It may as a discretionary matter, but with respect to the visa and all of the non-discretionary determinations for adjustment, that would all be dependent, first of all, on his wife being approved for adjustment, first of all. And that's not even clear from the record if she is. She was still applying for adjustment. She had the visa available, but her approval wasn't even in the record yet. And he was applying as a derivative beneficiary off of her adjustment application. What about. . . Well, that's Cattlehand's question. If not, I'll ask it myself. But I think her question was, do the DUIs disqualify him from adjustment? And I think your answer is no, although they could be considered. Was that your answer? I'm not. . . I am not certain as to whether or not they are disqualifying, but I do know that they can be considered in determining. . . You don't know whether they're disqualifying. Right. But I do know that they can be considered in the determination. Is opposing counsel right that the handwritten notes on 21, the 22, would have been entered into an electronic A file? I understand that it would be, yes, Your Honor. Okay. And then, and that's. . . I think of that as a client file that doesn't necessarily get to people like you who come to court. But what you get is an administrative record. That's correct. And these would have been in the administrative. . . A, R, 20, 21, and 22 would have been in the administrative record. Only because they were submitted by petitioner. So when. . . Right. So when the BIA says that A, R, 20 is not what it purports to be, that might not be an exact quote. Uh-huh. I mean, there's three of us up here trying to make sense of this. And I'm trying to figure out what your best answer is about why a petitioner would have known what this. . . It sure sounds like an extension. And that's part of why I'm putting this into context. Because counsel, he was represented by counsel. Not present counsel, but a different attorney below. And throughout this, she was on notice as well, given DHS's opposition to her motion to reopen. So your answer is he would have known because his lawyer would have known. That's correct. Okay. So on the sua sponte reopening. . . Uh-huh. You argue that this Court may not review the BIA's denial of sua sponte reopening because its decision was based on a factual, not a legal or constitutional dispute. That's correct. But the BIA's reasoning appears to rest on some legal conclusions in regard to the meaning of the Form I-210 and DHS's authority and actions in this case. Do we have jurisdiction to review these determinations for legal error? You would have, Your Honor, except that I think in this case, the Board of Immigration Appeals correctly stated the legal basis. It agreed with Petitioner that DHS does have the authority to extend voluntary departure, but it is limited by the statutory amendments, by ARERA's statutory amendments. So in this case, because it was an EOR, an IJ-granted voluntary departure post-decision, the maximum voluntary departure period that Petitioner could have gotten was 60 days. He was given 30, so any extension would have been limited to another 30 days. DHS does have the authority to extend, to grant voluntary departure periods up to 120 days if it is a pre-decision voluntary departure. That's not at play here because everything here happened post-decision when the immigration judge granted voluntary departure at the end of the merits hearing. So can you tell from this record exactly what the reasoning was on the denial of the sua sponte reopening motion? Because it would, I mean, if they got the, I'm having a little bit of a problem telling exactly what the reasoning was there. Ms. Callahan, before you answer, can I just, are you referring to the February 27 order? Well, it would be the sua sponte reopening motion. Yes, that's the 2015 order. February 27, okay, yes, 27, February 27, 2015. 2017, yes. Okay, great, okay. Okay, so the board says that according, and this is, again, solely in the context of sua sponte, according to the form, DHS was simply granting the respondent the opportunity to depart at his own expense on or before February 8, 2015, because, again, the voluntary departure period had already expired and it couldn't be granted. Well, it doesn't sort of unwind all of this in that, and so it's hard to know whether it relied on, if we felt that it was hard to ascertain, did it rely on a, you know, what was it relying on legally? Would it be appropriate to remand and ask the BIA to say what the BIA was relying on? Well, there's also AR8, which was the DHS's opposition to the motion, where DHS argued the denial of respondent's motion to reopen similarly did not extend the voluntary departure period as that motion was filed after expiration of the voluntary departure period. The form I-210, which is AR20, merely afforded the respondent, petitioner, an opportunity to depart without having to endure custodial removal. So that was DHS's own interpretation of its document. And so the Board of Immigration Appeals had DHS's position as to how this document should be read. And as a factual matter, DHS says this is not an extension. This is simply because the motion, pardon me, the voluntary departure period had already expired and couldn't be extended because February 2015 is well beyond the 60 days that he could have legally been granted an extension of voluntary departure. So when the board denied the sua sponte reopening on this basis, the board was denying, I'm assuming, on that opposition as well as its own reading of this document that says- You're assuming, but could it have been clearer? It could have been, Your Honor, but I think there's sufficient indication in the record for the court to see the board's reasoning. It doesn't have to necessarily spell it all out, especially since it was a sua sponte denial. But I believe that in this case the board got the law right. It said the DHS does have the authority to extend voluntary departure. So under Bonilla, the court wouldn't have jurisdiction to review because the board applied the correct legal background. There was no legal error for the court to review under Bonilla. And according to Petitioner's own brief to this court, whether or not his voluntary departure period was extended and whether or not this is an extension is a factual matter, and he has asked the court to remand for a factual hearing. All those indications, to me, lead to the conclusion that there is no fact, that the disagreement here is a fact-based disagreement that the court can't reach even with Bonilla. And I see that I'm well over my time. Unless the court has any further questions? Thank you. If you'd put two minutes on the clock, please. But we took the government well over. We'll give you a chance to say what you need to say. It will be quick, Your Honor. The problem I see in this court is we have a record that is hard to follow and we cannot determine from this record what did occur. We have a voluntary departure form, an extension form, that was used, I-210. In addition to that, and that's Exhibit A-R-20, you then have attached to that Form I-220A. That's 21. Those are the handwritten notes. What we don't have is I-220, which is an order of supervision that ICE does, and they use these forms on it. So the question is, he was given a voluntary departure form and the government is saying, well, this was just allowing him to stay here on this reporting form, but then that would be an order of supervision. Again, we don't have a proper record. What you have is a voluntary departure extension form that was used and checked, and I think the court is correct. Doesn't that mislead the petitioner? And I think it would. And, again, these are facts that I know because I've been doing it for 28 years, but I can't add those facts in. I can only say, generally speaking, when you are out on supervision on an order like this, it's an order of supervision from ICE, and you do check in every month, just like what was attached to the supervision. So what are you exactly asking this court to do? I'm asking the court to grant the case and remand it for two things. One, whether the voluntary departure order was, in fact, revoked, or two, was it extended, and should the BIA determine if it was an extension or not an extension? Well, what was an extension, what we have here? The AR-20. Well, I think they decided that. I think they said this is not an extension. This is a permission to depart voluntarily on such and such a date. And I would say if that's the case, then it should have been an order to supervise. It's not. It should have been. I'm sorry, I didn't hear you. If that's the case, it should have been. An order of supervision. You mean they used the wrong form? They used the wrong form and the wrong conclusion. And we don't know because we don't have an adequate record before us. I would say that he was granted voluntary departure. But let me come back and say, because you said I would like an order of remand to allow them to do two things, and the second one was to construe the document we see here at AR-20, which is at I-210, but they've already construed it. They've construed it. So you want us to tell them that they're wrong? Yes. Well, then what's there to remand? I mean, we just tell them they're wrong. That's true. That's true. You could say it was wrong and it was properly filed. Properly filed is different from what his legal consequence is. That's true. So on what basis are you saying that we should tell them that they're wrong? I mean, I can't really ask them, would you have a look and tell us what it means because they've already had a look and they told us what it means. Right, but I understand that, Your Honor. I guess my frustration with this case is we don't have an adequate record to say what it means. We don't have the ICE officer who was conducting the reviews to say, this is an extension of the voluntary department. Is this more than – but they did say what it meant, and you disagree with it. And so if we don't think that they were wrong, then how do we – I mean, I know like what you're saying is basically you want them to say that he didn't violate this, but I don't – how do you get – you know, other than, you know, I don't know how you get to where you want to go in the posture that you are. And, Your Honor. Other than just say, this is – I don't like what happened and you guys have to somehow figure out a way to make it right. Well, I think that the BIA has to give more than a conclusionary statement that it is not an extension. And here – You want to remand for reconsideration for a – How they determined that it was not an extension. How they determined on – the conclusion reached on AR-8? Yes, Your Honor. But again – So is that based on your motion that you're challenging the sua sponte, or what is – how do we – what's the mechanism to get there? I think it is the sua sponte request, Your Honor. I think the court has the ability to do that because it's a legal question. And the cases cited say that this court does have jurisdiction to do that. Again – I mean, I get that we have jurisdiction under BNEA to say we remand or we review the sua sponte order if there's a legal mistake. I get that. And you're saying there's been a legal mistake? I am, Your Honor. And the legal mistake is? That they – how they classified this as not a voluntary departure extension, I don't know how they did that, whether they applied the law to it, whether they factually looked at it. That's what I'm saying is all they say is it's not a voluntary departure extension. So that's why I come back to you seem to be objecting that they've given a legal conclusion  Right. That's really your argument? That doesn't give us much to work with because they're either they're right or they're wrong. And given BIA explanations, this is about as much as we ever get. I concur with that. And you're saying, well, they're wrong or we should remand because we want a more extensive explanation? Yes. Due process requires we at least know why, even in these proceedings. Well, if we thought that they were right, then to ask them to give a more detailed explanation of why they're right, then where does that get you? Well, if you think that they're right, then my petition's denied and dismissed. From a legal standpoint. So say again to me not that they need to explain more, say to me again why you think they're wrong. Because what law are they relying upon? No, I didn't ask that. Well, why are they wrong? Because the form says it's voluntary departure. There's nothing that contradicts that in the record. The government says it's verification of departure. They're allowing him to stay and check in. And I'm saying that may be true. Then it would be an order of supervision. So why would you grant or file the notice of voluntary departure verification in the extension form? I'm not sure that you're not really arguing in response to counsel's answer where we said, well, how would the petitioner have known? We read through the sentences with the checkbox on AR-20 and asked how would the petitioner have known? And her answer basically at the end of the day was he would have known because his lawyer knew darn well. His lawyer knew. And are you really contesting the legal effect of this or whether they were fairly on notice of this, of the fact that he had not been granted voluntary departure? You could argue that they may not have been on notice of it. It's something that's done between the ICE officer and the respondent. Well, I think it matters for purposes of remand about what you're asking us to ask them to take another look at. I would say they didn't receive notice until they got these documents. But if we're arguing reliance, this document is dated very late. I mean, he relies on the document once the document is in existence. The document is not created until February. That's correct, Your Honor. I can't change the date of that. What am I supposed to do with that? That is a factual problem. I can't get around. I'd like to help, but I'm trying to figure out a way to do it. Your Honor, so am I. That's why I'm here and not there. Thank you. Are there no further questions? Okay. Thank you. Thank you both. Both sides. Rodriguez-Valle is submitted.
judges: W. Fletcher, Callahan, Christen